Our final case is now United States v. Olivo. Good afternoon, Your Honors. I'm Richard Rosenberg. Good to see you. I'm here to argue the appeal of my client, Ernesto Olivo, who is currently serving a sentence of 120 months following his conviction last year in the district court of narcotics-related offenses. And the gravamen of our argument, Your Honors, is that the district court made errors that undermined the integrity of the jury process. And I refer to this case started, in the original indictment, as an 18-kilogram cocaine-related case. There was a seizure of 18 kilograms of cocaine in Miami. Originally, the indictment referred and the original complaint referred to my client as being involved in that importation as a distributor. That was a key piece of the government's case. It was later superseded to include methamphetamine trafficking charges. But at the conclusion of the government's case, when we moved for a Rule 29 dismissal based on pay on weight and the apprendi and weight being an element of the crime, the district court erroneously was under the impression that the argument of weight didn't go to the element of the crime or the sufficiency of the evidence, but rather only to punishment. Therefore, letting the jury consider the testimony concerning those 18 kilograms of cocaine in its deliberations of the overarching conspiracy charge. Subsequently, as Your Honors know from the record, during post-verdict and prior to sentence, the district court had second thoughts about its original decision and invited submissions, and at sentencing found that indeed weight was an essential element of the crime of a narcotics conspiracy, at least as charged as a B1A, and found that the evidence was speculative, too speculative to be considered. And it was not considering that as part of her analysis on weight in determining whether the government had carried its burden and the jury's verdict as to the highest level of culpability was sustainable. Your Honors, if the district court had correctly decided that it had the authority and that weight was indeed an element and not submitted those 18 kilograms for the jury's deliberations, it's our position that the integrity of that process has been undermined. We don't know to what degree that jury took into consideration those 18 kilograms, not only as to the total weight but as to Mr. Olivo's conspiratorial conduct and what his entire responsibility should be in the ---- Including the methamphetamine. Including the methamphetamine, exactly, Judge Sachs, because it was such an integral part of the government's case, such a key part. They had the 18 kilos in court sitting on a table. You had agents flying up from Florida testifying to it. You had a recording. It was a major piece of evidence. This is an easy argument, but there was evidence that linked Mr. Olivo to an additional 15 kilograms of cocaine, even if you discount the 18 kilograms. So on a sufficiency challenge, I would think it's difficult to argue that the evidence was insufficient as a matter of law. What am I missing? Well, we don't know, Judge Raggi, what the jury, what part of that ---- We have to view the evidence in the light most favorable to the jury's verdict. So why wouldn't we assume that there was evidence of 15 kilograms and that would independently be sufficient to support the verdict? Well, again, that gets to the argument of what influenced the testimony about the 18 kilograms had as to the testimony regarding these other 15, which were based on points 1 and 2. On hearsay ---- That would be a taint argument that's different from a sufficiency argument. Yes, it's a taint. And I didn't understand you to be raising that. Well, perhaps I didn't do it artfully, but what I tried to point out in point 3 is that it was tainted, that the verdict was tainted by the ---- by submitting the 18 kilograms. The challenge is that it was insufficient to prove a conspiracy to traffic in 5 or more kilograms. You're arguing about this 18 kilograms, but I'm suggesting to you, you put that aside, there's evidence linking him to 15 kilograms, and unless I'm missing what the standard is, we review that in the light most favorable to the verdict. Again, Your Honor, I guess it's more of a taint argument, as you mentioned. And how is it tainted? By allowing the jury to consider the 18 kilograms of cocaine. Because it shouldn't have come in for what reason? Because that itself, that connection to those 18 kilograms was insufficient to allow it to go to the jury. It was not tainted. You're saying that evidence couldn't have supported it because it doesn't link to him. But there's other evidence that links to him. Okay, let me let you get on with your other argument. And the other argument was, Your Honor, about the hearsay, the impermissible hearsay, letting the non-testifying confidential source testify that Olivo was the one who informed him that drugs had arrived or were in Florida. The argument of the government that I opened the door somehow, I didn't. My questions on cross-examination had to do with when the agent discussed those kilograms with him and whether or not he had given Olivo a telephone number, which ended up being an undercover. But the question on redirect, which was later used on rebuttal summation, was that my client, Olivo, was the one who informed him about the 18 kilograms or he learned about the 18 kilograms of cocaine in Miami from Mr. Olivo. So that's a different question that I don't feel I opened the door to. I thought it was an impermissible use of the hearsay, as was the use of the chat messages and text messages of individuals who were not identified during the trial, who had no ostensible connection with Mr. Olivo, with the conspiracy that he was alleged to have participated in. They were just excerpts that were pulled out of conversations that demonstrated more of a buyer-seller relationship between those individuals and an overarching conspiracy which he was accused of, Your Honor. Thank you, Your Honor. Thank you. May it please the Court. My name is Jessica Lonergan. I represented the United States below, and I represent the United States here on appeal, and I'm sorry that my voice is hoarse. There's a cold going around our entire office. Jessica Lonergan, I'm troubled by your argument in justification of your eliciting, incriminating hearsay. Referring to page 15 of your brief, you say that the defendant was the one who elicited the hearsay, for starters, so you were justified in doing it to rebut what the defendant had done. And I'll acknowledge there were three incidents in the defendant's examination, and the first two were, admittedly, attempts by the defendant to elicit hearsay that would show that the information came from the defendant. But in each of those cases, there was a prompt objection and a sustaining of the objection before the question was answered, so there was no hearsay testimony elicited. Then you say in your brief, in the middle of page 15, defense counsel then walked through the door the next morning, and then you go on describing what happened the next morning, and you refer to page 88 and 89, and I look at what counsel did on page 88 and 89, and I don't see any hearsay there. What counsel elicited was he said he was going to do it a different way, and he did do it a different way, and so far as I can see, there's no hearsay there. He elicited that he got the telephone number from Isidro. That's not hearsay. And then he said, then he questioned, did you give Isidro instructions? Yes, I instructed him to say that he didn't want to make the call and tell the defendant to make the call. Now, where's the hearsay? Your Honor, the hearsay is actually in a leap, which is that the defendant does, in fact, make the call. And so the hearsay is the offer of an out-of-court statement to prove the truth of what is stated in that out-of-court statement. Now, where is the out-of-court statement offered to prove the truth of what was stated in the out-of-court statement? Your Honor, the statement is that Isidro then told the defendant to call the undercover officer. Well, he that's it's not hearsay. It's not hearsay when one when one testifies, I instructed somebody to do something. That's not hearsay. That's correct, Your Honor. So where's the hearsay? The hearsay is my point to testimony, which included which included an out-of-court statement, which you argue communicated to the jury and a fact asserted in that out-of-court statement for the truth. I thought the argument was that it's the law enforcement officer who's testifying when the C.I. said he had done the statement the C.I. made. That's correct. And he told the law enforcement officer, I said X. Yes, and he told. Where is that point to the testimony? Because there isn't any. One moment, Your Honor. He tried twice. He tried twice to do that, and you objected and the Court sustained it before it was answered. But then he said, I'm going to do it a different way. And the different way was by eliciting that the witness, law enforcement officer, got a telephone number from Isidro. That's not hearsay. And that he told Isidro to do something. And you tell the defendant to call the number. So Your Honor says that the information. Tell us where you're reading from.  So one second. It's on page. I'm just going to make sure I have it. Page 88 and 89 are the pages you referred to. That's where I see the relevant stuff, particularly on 89. Did you give Isidro any instructions regarding the phone number? Yes. What was that? To hold off doing anything until I checked out the number. Your Honor, I would actually cite to pages 68 and 69, which is when the questions go as follows. Question. This is on cross-examination. So you had the information from. One second. Let me just find the page. Because that's not what you referred us to in your brief. You referred us to 88 and 89. Are you on the appendix pages? No, I'm in the transcript pages, Your Honor. Transcript pages. You're saying we should look at 68 and 69? That's correct, Your Honor. Well, okay. So that was the second incident. I'm talking about where you say defense counsel walked through the door the next morning. Because 68 is the previous one. All right. So that was objected to and wasn't answered. No, Your Honor. It actually was answered before it was objected to. It says, question. So you had the information from Isidro, correct, about 18 kilograms. Answer. That is correct. Then I objected, and then the court said, I'm hearing doors opening, questions been asked and answered. And there was no striking of Agent Dill's answer at that point. So at that point, the record in front of the jury suggested only that the information about the 18 kilograms came from the confidential source, Isidro. And that was the entire gravamen of defense counsel's argument, which is that Isidro was a bad actor who was acting to frame the defendant, that the defendant had no information and no involvement in the 18-kilogram shipment until Isidro told him about it. And that there were law enforcement officers working with him. Correct. And so that it was entire conspiracy to frame the defendant by both Agent Dill and Isidro. And so I think that that was really what was one of the things that we were responding to, is that was now an answer on the record. So when you say in your brief, pointing to that paragraph on page 15 of your brief, you're saying that one should disregard. When you say defense counsel walked through the door the next morning, that should just be stricken, because that's not true. There wasn't any hearsay the next morning. The hearsay was in the previous part, in the first half of the paragraph. Your Honor, I think I would – I think that the 68 and 69 supports the argument that we're making. Not 88. No. That may actually be – I'm sorry. That may also be a miscite in the brief. I apologize for that. But I think that the argument is based on what has been elicited where I pointed to in 68 and 69. All right. Now, the district court allowed you to elicit the testimony and then gave an instruction that it was not being perceived for the truth, but just to allow the jury to eliminate a misimpression that law enforcement authorities had acted without a good faith basis to think that Olivo was trafficking cocaine. But then on summation, the district court at the time was concerned that the prosecution crossed the line on that. And I want you to address that. Yes, Your Honor. So I would address that in a few ways. First, I would address it by saying that the use of the testimony in the rebuttal did exceed the district court's ruling, but that this error was harmless for really three reasons. First, there's no prejudice because as we argue here and as we attempted to argue to Judge Caproni, although she rejected the argument at the time, that these statements could have been admitted for their truth under the doctrine of curative admissibility. And so the fact is that this court can affirm on any ground that's supported by the record, and the fact that the statements could have come in for the truth means that there was no prejudice in this context. Secondly, the district court in a very short trial gave multiple limiting instructions. There was a limiting instruction when the testimony was first elicited, and then the limiting instruction was actually given twice at the close of the trial because the first time the district court misstated and said that it was during the defense summation. She was then corrected and then said no, it was during the government summation. And if you read the transcript, it says she's looking at the jury and she says they got it, and that was because she was responding to basically what she was seeing the jurors were indicating to her. And then third, this was one statement out of an entire rebuttal, and there was no objection at the time. So this court is reviewing the error under plain error review because there was no contemporaneous objection, and also this court's precedents make very clear that the court is not to consider this statement on its own, but in the context of the entire summations that were made and then the entire arguments that were made during the trial. I have a different question with respect to prejudice. The jury specifically found Mr. Alivo guilty of trafficking in quantities of methamphetamine, both substance and pure, that was enough to trigger the mandatory minimum he's serving, right? That's correct, Your Honor, and that's actually... Is that part of a prejudice consideration? Yes, correct, Your Honor. That's the actually overarching argument I was going to start with, which is that there is simply no... So this appeal challenges only issues with respect to the cocaine. If we step back for a second, Mr. Alivo was also convicted on B1A methamphetamine, and there's no challenges as to that portion of the conviction. He also received the mandatory minimum sentence. So even assuming for the purpose of argument that this court agreed with all of the appellant's arguments, there's really no... There's no recourse because he received... And there's no prejudice because he received the mandatory minimum sentence. Maybe we would be having a different conversation, possibly, if he received a sentence of 120 months and one day, but that's not what happened here. So even if this court overturned the cocaine conviction, he would receive the exact same sentence from Judge Caproni. So there's no need for resentencing, even if this court were to agree, of course, as we argue here and argue in our briefs. We disagree with the appellant's arguments with respect to cocaine, but honestly, all of those arguments are moot. I'm sorry. I want to go back again to page 68. Yes, Your Honor. I think I was a little bit misled or misunderstood. You have indeed pointed to a question that was answered before the court sustained the objection, but that question didn't include any hearsay. The question was you had the information from Isidro. I'm looking at page 68, line 22. That's what you're talking about, right? That's correct, Your Honor. The officer testifies that he learned about 18 kilos from Isidro. Where is the hearsay? That's a statement that Isidro makes about 18 kilograms. No, the officer said he was asked, the officer was asked, where did you hear about 18 kilos from? Who did you hear about 18 kilos from? I heard about it from Isidro. Where is the hearsay? Where is a statement, where is an out-of-court statement that's being received for the truth of it? I mean, there's no doubt that he did hear about it from Isidro. You're not contesting that. One moment, Your Honor. Your Honor? When asked somebody, who did you hear about something from? He said, I heard about it from so-and-so. That's not a hearsay. All right. I thought your argument was that they elicited that the agent heard about it from the C.I. So the C.I. statement, your view is that that's a hearsay, and Judge LaValle suggested to you that it's not. But what you were allowed to put in then was the statement by Isidro that he heard about it from Olivo. That's correct, Your Honor. And so this is the challenge or the concern that we have. And my understanding from your brief is that you were arguing that without that part of what Isidro told the agent, it could look as if the C.I. and the agent had concocted this whole framing scheme. That's correct, Your Honor. That is correct. That that is exactly the argument. You argue that your authorization, that the reason why it was okay for you to put in prejudicial hearsay, was because the defendant had opened the door by doing improper hearsay on his part. And I don't see any. I do see an effort to do it in the first of the three instances, which you promptly objected to. The judge promptly sustained it. Then the defendant returned to it asking a non-hearsay question, as to which the district judge said he sustained it, although she sustained it, although it wasn't hearsay, and said, I hear doors opening, but they hadn't opened. And, indeed, you acknowledge in your brief that they hadn't opened. Then you say that next day is when the defendant did walk through that door, and the questions that were asked on the next day are clearly not hearsay. So I question whether you have a basis for having argued that your hearsay was justified by their hearsay, by the defendant's hearsay. Your Honor, so at the last objection, which is on the transcript, I'm starting with page 103 of the transcript. 103? Correct. Okay. This is not something that you cited. Okay. 103. Yeah. And so this is on redirect, where I ask, who did Isidro say he got that information about those 18 kilos from? That's hearsay. That's unquestionable. Right. Right, Your Honor. But I'm then going to the court the discussion at the sidebar. So at the sidebar, the court says to us, you can elicit that Isidro told him that he had been given a number to call, not from whom he had been given a number to call, and that's how we found out there was an undercover involved. And Mr. Capone argues that Mr. Rosenberg ---- Where are you now? This is on page 107. And he says if Mr. Rosenberg was allowed to confirm that the information about the 18 kilograms came from Isidro. So my understanding is that the defendant was trying to argue this for the truth that Isidro provided this information to Agent Dill. But isn't Agent Dill a confident witness to testify to how he got the information? Yes, he is, Your Honor. All right. So what's the problem? Now you want to be able to elicit that Isidro got it from someone else. Usually you would have to call Isidro so that he could be subject to cross-examination on whether he's going to say it's the defendant or any other person on the planet who gave him the information. Yes, Your Honor. So the question is why do you think that without doing that you were entitled to put in this evidence? Well, so the first thing is that I think that the information, as we argued to the district court and came in for, was to explain for the proper non-hearsay purpose of what Agent Dill was doing, that he was allowed to explain that the reason that he was asking Isidro to tell the defendant to call the undercover was because he had information from Isidro that the defendant had provided that phone number and had information about the 18 kilos. Regardless of whether or not that was true, that is a proper purpose, which is so that Agent Dill can say it's not that. I mean, to step back, he's saying we were not targeting this person. I had information.   Roberts. Why were you observing that house? Oh, because we had received information from a confidential informant that the defendant committed the crime, and that's why we were looking at the defendant's house. We were just making it clear to the jury that we weren't targeting the defendant or doing anything improper. But that's highly prejudicial hearsay, and you can't introduce highly prejudicial hearsay just to show that the government had a good faith basis for doing what it's doing. Well, Your Honor, if you look at how the Q&A was constructed, the direct was very carefully limited not to elicit anything about this. But then through Cross, the defense's questions, the entire purpose was to argue that you can do that within the rules of evidence. The defendant artfully skirted the question. He said, I'm going to do it a different way, and he elicited that the agent told Isidro, I'm telling you have the defendant make the phone call. That is a proper question. It doesn't open the door to you to ask improper questions because the defendant has brought out something that you don't like through a proper question. Your Honor, I do think that it is a proper purpose to allow hearsay not for its truth to explain Agent Dill's actions, and I know that the court has just expressed concern. Why did you argue to us that it was tit for tat, hearsay for hearsay, when there wasn't hearsay on the defendant's side? Your Honor, I think that those are both arguments that can be made, but right now I think that the court is asking about that there is also a non-hearsay purpose, and so even if the court disagrees. You're saying that you argued to us that the defendant's hearsay justified the prosecutor's hearsay, and there wasn't any defendant's hearsay. There was an attempt to, it was objected to, sustained before it was answered, and then he did something that's perfectly proper questioning. Your Honor, if you read the record like that, which I can, I hear what the court is saying to me, I'm not. I'm offering to you to point to me to a hearsay, to a hearsay, and you haven't done it. Yes, Your Honor, at this moment I am having that difficulty. I apologize. But I would also say that the other arguments nevertheless stand, that there was a proper non-hearsay purpose, which the court allowed, which was to explain the actions of Agent Dill, and then again stepping back that there simply is no prejudice to the defendant for multiple reasons. One, as we discussed is the methamphetamine, and two, as Judge Caproni found and is not being challenged on this appeal, there was sufficient evidence of more than 5 kilograms of cocaine in other portions of the record, and I don't think that this evidence with respect to the 18 kilograms was so different from that evidence that there was, that there was taint in the remaining cocaine evidence. The defense, I mean the government may have every reason to be frustrated if the defense is building from evidence that can elicit the suggestion that the government framed the defendant, but you would agree I think that the mere fact that that is part of the defense strategy, part of the defense, doesn't mean that you're then absolved from rebutting it through the rules of evidence. That's correct, Your Honor. So now you're offering this hearsay, and the district court does limit it, saying it's not being offered for its truth, but if it's not offered for its truth, am I right that all it does is absolve the agent from being involved in a frame? It doesn't mean that Isidro didn't make it up that whole clause. That's correct. That's correct. It's possible that, and that's why I think we are conceding that the rebuttal point was inartfully phrased. On the main summation that government argued, I think more properly under Judge Caproni's ruling, that this was not improper motives by Agent Dill. On rebuttal, again, an inartful and exceeding the bounds of Judge Caproni's ruling in terms of arguing it in the terms of Isidro's motive, but as I mentioned before, I think that that, despite the fact that that was error, that here that error is harmless for a number, for the reasons I've already stated. Thank you very much, Your Honor. Just briefly, Your Honors. I find it hard to see this as a harmless error when a jury hears this type of evidence and is considering a defendant's overall guilt in an overarching conspiracy. When you have such improper, if I might say improper, testimony and comment on summation that, as Judge LaValle pointed out, was not a door opened by the defense. Let me ask you, was the purpose of this line of examination, if we understood it correctly, to suggest that the confidential informant and possibly the agent had framed? No, that was really... What was its relevance? Its relevance was actually that Isidro, that my client was not involved in the importation, that Isidro had independent information in his capacity as an informant. You solicited that the agent tell Isidro to have the defendant make the call. So looking at the line of questions, what is the inference you want the jury to draw from these people's actions? Because the telephone records show that my client called the undercover from his phone. Right. So I want to have an explanation. The agent who gave the direction that it happened that way, and the government is arguing that's because you were trying to suggest that the agent and the confidential informant were basically targeting, if not framing, your client. Not the agent, but the confidential informant, by having him. But then it was elicited that he was directed to do that by the agent. The real issue was where did the defendant get the telephone number from. That was where I was going on that charge. That was the real issue. Yes. Because if the defendant knew the telephone number, that meant the defendant somehow got the phone number from the people in Ecuador... Exactly, Your Honor. ...with whom the government had given it. So you were suggesting through the question, when you asked the agent to say that he told Isidro to tell the defendant to call that number, the jury could draw the inference that the defendant got the number from Isidro. Yes. Exactly, Your Honor. Did Isidro got it from the agent? From any place. Wherever he got it from. But I wanted to put that distance.